UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SCOTT WALTER SNYDER,   No. 7-13-12719 TR

Debtor.

## MEMORANDUM OPINION

Physician Groups, L.C. d/b/a Medical Group of Missouri ("Movant") moved to dismiss or convert the Debtor's Chapter 7 case for lack of good faith. The Court held a final hearing on the motion on March 4, 2014. Being sufficiently advised, the Court concludes that the motion should be denied.

I.   FINDINGS OF FACT

The Debtor filed a voluntary petition under Chapter 7 on August 16, 2013 (the "Petition Date").

Debtor, a licensed medical doctor, is 63 years old. He is married. He and his wife have two adult daughters, neither of whom lives with the Debtor.

Debtor practiced obstetric medicine for many years in the St. Louis, Missouri area. He was a sole practitioner who made about $100,000 per year.

In or about June 2010 Debtor gave up his sole practice and entered into an employment agreement with Movant.

Movant terminated the Debtor's employment in December 2010, for reasons never explained to the Court.

Debtor strongly disputed Movant's decision to terminate his employment agreement so soon after it was signed. Debtor believes Movant destroyed his medical practice, left him

unemployed and, by forcing him to relocate for work, caused him to realize a substantial loss (about $40,000) on his Missouri house.

Debtor moved to Roswell, New Mexico in 2011. Since mid-2011, Debtor has been employed as an obstetrician by Roswell Clinic Corporation.

After terminating Debtor's employment, Movant demanded that Debtor purchase a "tail" malpractice insurance policy. The requirement to buy the tail policy apparently is in the employment agreement. The cost of the tail policy was $145,254.

Debtor did not buy the tail policy, so Movant did.[1]

Movant sued Debtor in Missouri state court in 2012, seeking to recover the cost of the tail policy.

Debtor retained counsel and defended the Missouri state action for a period of time, but ran out of money and could no longer pay his counsel. Debtor's state court counsel withdrew from the representation and on March 13, 2013, the Missouri state court entered a default judgment against Debtor for $170,854.09.

Movant domesticated the Missouri judgment in New Mexico in June 2013 and obtained a writ of garnishment on or about August 6, 2013, prompting Debtor to file this bankruptcy case.

Debtor's wife did not file for bankruptcy relief.

Debtor's schedules list two secured claims (car loans), both of which have been reaffirmed.

The Debtor's only other listed creditor is Movant.

Debtor's current salary is about $290,000 per year.

---

[1] The purchase turned out to have been prudent, since a malpractice claim was brought against the Debtor and Movant that was covered by the policy. The purchase benefited both the Debtor and Movant.

At his current salary, Debtor likely will have about $5,000 per month available after paying living expenses. These excess funds could be used, inter alia, to pay Movant over time, or to save for retirement.

On the Petition Date, Debtor owned a 401k account with a value of $119,808.47. Debtor testified, and the Court finds, that Debtor is worried about his retirement, wishes to save as much money as he can in the next several years, and does not believe he can both pay Movant $170,000 and save enough money to retire before he is too old to work.

Debtor's wife owns jewelry that is worth between $25,000-$60,000. His counsel advised Debtor not to list his wife's jewelry on his bankruptcy schedules because the jewelry was the wife's separate property.

Debtor disclosed his wife's jewelry to the Chapter 7 trustee at his § 341[2] meeting. The trustee disputed Debtor's position that the jewelry was not property of the estate. The parties settled the dispute by Debtor and/or his wife paying the trustee $30,000 in cash.

The Debtor does not own any real estate.

The Debtor has no non-exempt property except his wife's jewelry, to the extent some of it may be community property.

The Debtor has not taken any vacations for the past five years except than to visit his children in Missouri.

The Debtor is giving $650 per month to his youngest daughter to aid her living expenses. This support will stop in June when she gets married.

The Debtor paid for his older daughter's wedding and is saving to contribute $10,000 towards his youngest daughter's wedding.

---

[2] All statutory references are to 11 U.S.C.

-3-

Debtor made no substantial attempt to settle with Movant. It is clear that Debtor does not believe he should have to pay Movant anything, although he acknowledges his legal obligation to do so.[3]

Debtor appeared and testified at the final hearing on the Motion. The Court found him credible.

Movant's representative, Stephen A. Thompson, was not an officer or employee but the lawyer who brought the suit against Debtor in Missouri. Mr. Thompson testified, and the Court found him credible.

## II. DISCUSSION

A. Dismissal Under § 707(a).

Section 707(a) provides:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28;
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

1. Bad Faith Can Constitute "Cause" for § 707(a) Dismissal. Although not listed as one of the enumerated events constituting "cause" for dismissal under § 707(a), most courts have held that proof of the debtor's "bad faith" in filing a Chapter 7 case constitutes "cause." *Indus. Ins. Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1126-27 (6th Cir. 1991) was the first circuit case address the issue. The Sixth Circuit held: "[T]he word 'including' is not meant to be a limiting word. A lack of good faith, furthermore, has been recognized in a

---

[3] Court does not know, and does not rule on, whether Debtor's views about Movant's claim have any merit.

-4-

number of bankruptcy cases as a valid cause of dismissal under 11 U.S.C. § 707(a)."  931 F.2d at 1126-27 (citation omitted).  The other circuit courts agreeing with *Zick* are *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000), and *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1262 (11th Cir. 2013).  Lower courts include *First Capital Bank of Kentucky v. Blok,* 2012 WL 1682042, at *4 (S.D. Ind. 2012); *In re Shipman,* 2012 WL 4498001, at *4 (D. Del. 2012); *In re Wagnitz,* 2004 WL 626821, at *7 (N.D. Ill. 2004); *McDow v. Smith,* 295 B.R. 69, 74 (E.D. Va. 2003); *In re Quinn,* 490 B.R. 607, 614 (Bankr. D.N.M. 2012).

The Eighth Circuit adopted a much narrower view about whether bad faith can constitute cause for § 707(a) dismissal.  In *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994), the court held:

> [T]he court in *Khan*[4] urged that bad faith under § 707(a) be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a "scorched earth" tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction. *Khan,* 172 B.R. at 624–26.
>
> We agree with the narrow, cautious approach to bad faith adopted in *Khan.* Congress has defined the ultimate issue in § 707(a) cases as whether the Chapter 7 petition should be dismissed "for cause." As this case illustrates, some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith. But framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7. Thus, we think the § 707(a) analysis is better conducted under the statutory standard, "for cause." If the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a).

39 F.3d at 832 (footnote omitted).  The court elsewhere said:

> [T]he court's approach in *Khan* is consistent with that urged in 4 *Collier on Bankruptcy* ¶ 707.03, at 707—10–11 (15th Ed.1992):
>> Bad faith may be found when the debtor has a frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process.  That the debtor

---

[4] 172 B.R. 613 (Bankr. D. Minn. 1994).

-5-

Case 13-12719-t7    Doc 50    Filed 04/04/14    Entered 04/04/14 14:29:34 Page 5 of 16

>   is merely taking advantage of its legal rights is not, by itself, sufficient to support a finding of bad faith.

*Id.* The Ninth Circuit has ruled that bad faith cannot constitute cause for dismissal under § 707(a):

>   The Bankruptcy Code's language and the protracted relationship between reorganization debtors and their creditors lead us to conclude that bad faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13 petition but not of a Chapter 7 petition under § 707(a)

*In re Padilla,* 222 F.3d 1184, 1193 (9th Cir. 2000). *See also In re Lobera,* 454 B.R. 824, 853 (Bankr. D.N.M. 2011) (no good faith requirement for non-consumer business debtor to file Chapter 7). The Tenth Circuit has not ruled on the issue.

The Court adopts the view that bad faith can constitute cause for dismissal under § 707(a). The Court acknowledges, however, the risk of using bad faith as "a loose cannon which is to be pointed in the direction of a debtor whose values do not coincide precisely with those of the court." *Huckfeldt,* 39 F.3d at 832 (quoting *Sinkow v. Latimer (In re Latimer),* 82 B.R. 354, 364 (Bankr. E.D. Pa. 1988)). Dismissal for bad faith under § 707(a) therefore should be limited to extreme cases, e.g., where the debtor has a "frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process." *Id.*

    2. <u>The Court Must Examine the Totality of the Circumstances</u>. To determine whether a chapter 7 case was filed in bad faith, courts must review the "totality of the circumstances." *Piazza*, 719 F.3d at 1271-72 (§ 707(a) bad faith inquiry requires the bankruptcy court to sift through the totality of the circumstances to see that injustice or unfairness is not done); *Quinn*, 490 B.R. at 618 (applying a totality of the circumstances test to evaluate the debtor's good faith on a case-by-case basis); *In re Standiferd,* 2008 WL 5273690, at

-6-

*12 (Bankr. D.N.M. 2008) (§ 707(a) bad faith inquiry requires analysis of the totality of the circumstances); *Blumenberg v. Yihye (In re Blumenberg),* 263 B.R. 704, 715 (Bankr. E.D.N.Y. 2001) (same); *In re Griffieth,* 209 B.R. 823, 826 (Bankr. N.D.N.Y. 1996) (applying multiple factors viewed together on an *ad hoc* basis to determine bad faith based on a totality of the circumstances).

        3.    <u>Conduct Relevant to § 523 or § 727 Should Not Be Considered</u>.  The conduct giving rise to bad faith cannot be the type that would support a denial of discharge under § 727 or nondischargability action under § 523.  This consideration follows from the rule of statutory construction that requires "that where both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first.   Therefore, a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct." *Padilla*, 222 F.3d at 1192 (citations omitted).  *See also*, *Quinn*, 490 B.R. at 617 ("[D]ismissal of a Chapter 7 case for cause may not be based exclusively or primarily on a debtor's conduct that forms the basis for objections to discharge under 11 U.S.C. § 727 or objections to dischargeability of particular debts under 11 U.S.C. § 523.").

        4.    <u>Bad Faith Dismissal is a Severe Step</u>.  Dismissing Chapter 7 cases for lack of good faith is a severe step, and should only be taken in "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a single debt based upon conduct akin to fraud, misconduct or gross negligence." *In re Perlin,* 497 F.3d 364, 373 (3rd Cir. 2007) (citation omitted).  The fresh start provided by a discharge "has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property

which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). Numerous cases, most of which discuss § 727 actions, emphasize that denying a discharge is reserved only for truly pernicious conduct, and a strong presumption in favor of discharge exists. *See Sierra Chemicals, LLC, v. Mosley (In re Mosley)*, 501 B.R. 736, 742 (Bankr. D.N.M. 2013); *Soft Sheen Products, Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (Bankruptcy Code is to be liberally applied to protect debtors where there is no intent to violate the Code). Although most of these cases deal with § 727 actions, their instructions are equally applicable to §§ 706 and 707 actions.

        5.    <u>Ability to Pay Creditors is Not Enough</u>. A debtor's ability to pay creditors is not enough to support a finding of bad faith. In *In re Marks*, 174 B.R. 37, 41 (E.D. Penn. 1994), the district court so held, citing S. Rep. No. 989, 95th Cong., 2d Sess. 94 (1978). The report states in part:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.[5]

In *In re Goulding*, 79 B.R. 874 (Bankr. W.D. Mo. 1987), the bankruptcy court, citing the foregoing language, said "It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not 'cause' as the word is used in Section 707 for dismissal." *Id.* at 876. After reviewing cases on the issue, the court held that ability to pay, by itself, is insufficient to dismiss a case under § 707(a). *See also In re Smith*, 507 F.3d 64, 74 (2d Cir. 2007) (ability to repay debts is not sufficient, but is part of the inquiry);

---

[5] Reprinted in Collier on Bankruptcy, 16th Ed., Appendix D, pt. 4(e)(1), p. 2044.

-8-

*Perlin.,* 497 F.3d at 374 (dismissal based on ability to repay is expressly prohibited by the legislative history); *McDow v. Smith,* 295 B.R. 69, 81 (E.D. Va. 2003) (high annual income and lavish lifestyle were insufficient cause for § 707(a) dismissal); *Quinn*, 490 B.R. at 617 (same).

    6. <u>Factors</u>. Not surprisingly, various factors have been identified and applied to determine whether bad faith exists. The factors identified by previous courts include:

1. Whether the debtor's manipulations (if any) had the effect of frustrating one particular creditor;
2. The absence of an attempt to pay creditors;
3. The debtor's failure to make significant lifestyle changes;
4. Whether the debtor has sufficient resources to pay a substantial portion of debts;
5. Whether the debtor inflated expenses to disguise financial well-being;
6. Whether the debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;
7. Whether the debtor reduced his creditors to a single creditor in the months prior to filing his petition;
8. Whether the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
9. Whether the debtor filed the case in response to a judgment in pending litigation;
10. The unfairness of using Chapter 7;
11. Whether the debtor is paying debts to insiders;
12. Whether the debtor transferred assets;
13. Whether the debtor employed a deliberate and persistent pattern of evading a single major creditor;
14. Whether the debtor failed to make candid and full disclosure;
15. Whether the debts are modest in relation to assets and income; and
16. Whether there are multiple bankruptcy filings or other procedural "gymnastics."

*In re Lombardo,* 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007) (listing 14 of the factors); *In re O'Brien,* 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005) (same); *Quinn,* 490 B.R. at 618 (listing all 16 factors but emphasizing the first six); *In re Baird*, 456 B.R. 112, 116-17 (Bankr. M.D. Fla. 2010) (listing 15 factors).

    7. <u>Applying the Law to the Facts</u>.

The Court weighs the *Lombardo/O'Brien/Quinn* factors as follows:

-9-

| Factor | Indicates good faith | Indicates bad faith | Comment |
|---|---|---|---|
| Did debtor manipulations frustrate a particular creditor? | X | | Debtor did not engage in any manipulations. |
| Any attempt to pay creditors? | X | | Debtor made no attempt to pay Movant but has otherwise always paid his creditors. |
| Did Debtor fail to make significant lifestyle changes? | X | | Debtor lives a modest lifestyle. |
| Could debtor pay substantial portion of debts? | | X | Could pay Movant over 3-5 years. |
| Did debtor inflate expenses to disguise financial well-being? | | X | Debtor's Schedule J is based on historical information, resulting in higher expenses than current expenses. The schedule was prepared on advice of counsel. |
| Is debtor overutilizing the Code to the detriment of creditors? | X | | This is Debtor's first case. He is not overutilizing the Bankruptcy Code. |
| Did debtor reduce his creditors to a single creditor in the months prior to filing his petition? | X | | Debtor had few creditors before Movant's judgment. |
| Did debtor file the case in response to a judgment? | | X | Specifically, Debtor filed the case in response to the wage garnishment. |
| Is it unfair to use Chapter 7? | X | | All things considered, the answer is no. |
| Is debtor paying debts to insiders? | X | | No. Debtor borrowed from family to pay shortfall when his Missouri house sold; they were repaid more than 12 months pre-petition. |
| Did debtor transfer assets? | X | | No evidence of asset transfers. |
| Did debtor employ a deliberate and persistent pattern of evading a single major creditor? | X | | No evidence Debtor "evaded" Movant—he never paid Movant because he did not believe debt was justly due. |
| Did debtor fail to make candid and full disclosure? | X | | Debtor's omission of wife's jewelry and his Schedule J expenses were both done on counsel's advice, with reasonable grounds. |
| Are debts are modest in relation to assets and income? | X | | Debtor did not overextend himself. Debt to creditor arose because of firing. |
| Were there multiple bankruptcy filings or other procedural gymnastics? | X | | No prior bankruptcy filings or other procedural gymnastics. |

Movant relies on Debtor's high income, his failure or refusal to try to pay or settle Movant's debt, his failure to schedule his wife's jewelry, his use of historical average expenses on his Schedule J, and the fact that Movant is Debtor's only unsecured creditor.

-10-

Debtor, in turn, relies on his age, his lack of retirement savings, his modest lifestyle, and his compliance with his obligations under the Bankruptcy Code. Debtor's position is that he has the legal right to discharge Movant's debt if he files for bankruptcy relief and turns his non-exempt property over to a Chapter 7 trustee. All things considered, Debtor deemed it more prudent, and within his rights, to file a Chapter 7 case rather than pay Movant its $170,000 judgment.

Debtor's current income is very high by New Mexico standards, $290,000 per year. As shown above, however, a high income is not sufficient for a bad faith/cause finding under § 707(b).[6] Further, despite his high income, Debtor has a legitimate need for bankruptcy relief. Given his age and current retirement savings, Debtor is faced with a choice of saving for retirement while he can still earn a lot of money, or else paying Movant and saving much less. Given the evidence that Debtor might have about $5,000 per month available to pay creditors or save for retirement, Debtor's desire to do the former is consistent with good faith. If Debtor works for five years and saves $50,000 per year, he would then have retirements savings of about $375,000, not an unreasonably large amount. On the other hand, if Debtor had to pay Movant, his retirement nest egg at the end of five years would be about $205,000, a significant difference.

Movant's second major point, that Debtor made no effort to pay the Movant's debt, also is not well taken. Debtor could not afford to defend himself in the Missouri litigation, resulting in the default judgment that now binds the Debtor and the Court. Nevertheless, Debtor feels very strongly that Movant, not he, is at fault for what happened in December 2010. Debtor knows he is legally obligated to pay Movant because of the default judgment, but does not think

---

[6] Had Debtor filed for bankruptcy relief shortly after Movant fired him, he would have been unemployed. At that time, it seems no bad faith argument could have been made. It is fair to conclude, therefore, that the main fact Movant is focused on is Debtor's current income.

-11-

it is *right* for him to have to pay. His only legal way to avoid the debt was to file for Chapter 7 bankruptcy relief and turn his non-exempt assets over to a trustee. Debtor chose that option, which Congress clearly intended him to have, regardless of income, absent other indicia of bad faith.

For most people with Debtor's age, experience, and current income, choosing to file a Chapter 7 bankruptcy case would be prohibitively expensive. In Debtor's case the cost to him was $30,000 plus attorney fees. Although not all individuals would have made this choice, it is not indicative of bad faith.

Movant next points to Debtor's decision not to list his wife's jewelry on his bankruptcy schedules as evidence of bad faith. The Court does not believe this indicates bad faith, for three reasons. First, the Debtor readily disclosed the jewelry to the Chapter 7 trustee at the § 341 meeting. Second, the Debtor had a good faith basis for asserting that he did not have to disclose the jewelry, since it could be that under Missouri law the jewelry is separate property. Third, his decision not to disclose the jewelry was based on advice of counsel.

Debtor's actions when faced with the Chapter 7 Trustee's demand for turnover are consistent with good faith. Debtor promptly settled with the Trustee for what appears to be a very reasonable amount. Movant will receive all of these proceeds, less the trustee's commission.

Movant next complains that Debtor inflated his Schedule J monthly expenses. This complaint has some merit, but Debtor's explanation was plausible. Debtor's Schedule J expenses are accurate historical average expenses for the year before the Petition Date. Debtor got the figures from Quicken or similar financial software. In most cases, the method Debtor used yields accurate information about current expenses. In Debtor's case, the figures included

many nonrecurring expenses, so Debtor's monthly expenses were overstated. The Court does not find that this was the result of bad faith.

Finally, Movant argues that the fact it is the Debtor's only unsecured creditor should be held against Debtor. The Court does not see it that way. The Debtor does not have a history of credit problems or failure to pay debts when due. On the contrary, the evidence indicates that Movant's judgment may be the only unpaid debt Debtor has ever had. Debtor's refusal to pay a debt he does not think justly due, even if stubborn and/or wrong on the law, is not bad faith, so long as the requirements of the Bankruptcy Code are met.

Based on the totality of the circumstances and duly weighing the factors listed above, the Court finds that there is no bad faith or other cause under § 707(a) to dismiss Debtor's Chapter 7 case.

B. Conversion Under § 706(b).[7]

Section 706(b) provides: "On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." Unlike § 707(a), there is no standard provided for determining whether the case "may" be converted; it is left to the sound discretion of the court. *See In re Quinn,* 490 B.R. at 621; *In re Gordon,* 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012) ("The decision whether to convert is left to the sound discretion of the court, based on what will most inure to the benefit of all parties in interest"). The court may convert Chapter 7 cases of individual debtors as well as businesses. *Gordon,* 465 B.R. at 690; *In re Lenartz,* 2001 WL 35814401, *2–*3 (Bankr. D. Idaho 2001).

---

[7] The Motion refers to § 707(b) as the basis for conversion. At the hearing, counsel for Movant stated that the section was cited in error. All argument at the hearing referred to § 706(b) rather than § 707(b), without objection. The Court will therefore address the motion to convert as being brought under § 706(b).

-13-

The Court should take into account whether there would be grounds to dismiss the case once it has been converted to Chapter 11 under 11 U.S.C. § 1112(b). *In re Hardigan*, 490 B.R. 437, 445 (Bankr. S.D. Ga. 2013) citing *In re Home Network Builders, Inc.,* 2006 WL 3419791, at *3 (D.N.J. 2006).

Two New Mexico cases have addressed whether to convert a Chapter 7 case to Chapter 11 even though there are insufficient bad faith grounds to dismiss the case under § 707(a). In *Quinn*, the court denied the motion to convert because the movant relied on the same evidence under § 706(b) as it did for its request under § 707(a). *Quinn* held: "Under these circumstances, it is not appropriate to compel the same end result through conversion to Chapter 11 when it is not appropriate to dismiss the Chapter 7 case . . . ." 490 B.R. at 621-22.

A similar analysis was applied in *In re Lobera*, where the court denied a § 706(b) request, stating: "[The movants] do not suggest any additional reasons for converting the case to Chapter 11 than they do for dismissing it under Section 707(a)." *Id. at 854. See also In re Hardigan*, 490 B.R. at 445 (denying conversion motion as an alternative to dismissal because no additional grounds for conversion were given, and the dismissal motion was denied).

Furthermore, as pointed out in *Lobera* there are potential constitutional problems with compelling an individual Chapter 7 debtor to convert to Chapter 11. 454 B.R. at 855. No one can force an individual to be a Chapter 13 debtor against her will, *see* §§ 706(c) and 1307(a), because doing so might violate the Thirteenth Amendment's involuntary servitude prohibition. *Lobera*, 454 B.R. at 855. *See generally Toibb v. Radloff,* 501 U.S. 157, 165-66 (1991) (Congress' primary concern about a debtor being forced into a Chapter 13 case was to avoid compelling debtors to toil for the benefit of creditors in violation of the Thirteenth Amendment). There are no similar statutory protections for potential individual Chapter 11 debtors, but the

-14-

constitutional right against involuntary servitude remains. It seems likely that the potential constitutional problem would constitute grounds to convert or dismiss Debtor's Chapter 11 case if Movant's § 706(b) conversion motion were granted. The result would either be futility or an indirect route to § 707(a) dismissal.

Here, the evidence relied on to support conversion under § 706(b) was identical to the evidence supporting § 707(a) dismissal. Following *Quinn, Lobera,* and *Hardigan,* the Court will not do indirectly what Movant has failed to show should be done directly. Even if such a showing had been made, the Court thinks dismissal is the only reasonable alternative, rather than conversion, unless the Debtor freely agrees to reorganize under Chapter 11. The Court, therefore, will deny the motion to the extent it seeks conversion.

## IV.    CONCLUSION

Dismissing a Chapter 7 case for "bad faith" should be done only in exceptional cases, prompted by egregious facts. In this case the facts fall short of this high standard. With his retirement looming and only $120,000 saved, the Debtor's decision to file a Chapter 7 case so he could save for retirement rather than pay Movant was not bad faith.

The Court will deny the Motion. A separate order consistent with this Memorandum Opinion will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 4, 2014.

Copies to:

Dave Giddens
10400 Academy Blvd, NE, #350
Albuquerque, NM 87111

Elizabeth Hightower
P.O. Box 550
Roswell, NM 88202

Edward Mazel
Askew & Mazel, LLC
320 Gold Ave S.W., Suite 300A
Albuquerque, NM 87102

-16-

Case 13-12719-t7    Doc 50    Filed 04/04/14    Entered 04/04/14 14:29:34 Page 16 of 16